204 So.2d 741 (1967)
Carey LAW, Appellant,
v.
STATE of Florida, Appellee.
No. 67-262.
District Court of Appeal of Florida. Second District.
December 6, 1967.
*742 Joseph G. Spicola, Jr., Public Defender, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen. Lakeland, for appellee.
ALLEN, Acting Chief Judge.
The appellant-defendant has appealed a judgment and sentence entered against him by the Criminal Court of Record of Hillsborough County, Florida. He was charged by information with breaking and entering and petit larceny. A jury found the appellant guilty and he was sentenced to five years in the state penitentiary.
The salient facts giving rise to appellant's conviction show that the M & A Garage in Tampa was burglarized on July 3, 1966. The owner of the garage was called to his place of business in the early morning hours on the above date, and, upon arrival, discovered that someone had broken into the cigarette machine and the cash register. All of the change from the cigarette machine was missing, along with some cigarette labels used to identify the various brands of cigarettes sold in the machine. Mr. Castro, the owner of the garage, testified that three dollars, which had been left in the cash register and clipped together with a staple, were also missing. After testifying with regards to the lights around the garage, the owner identified a bound envelope, which he had kept in his cigarette machine for some fifteen years. Certain of the above named articles were found on the appellant when he was arrested.
One of the State's witnesses, Charlie Maddox, on the evening in question, was stopped at a traffic light in the vicinity of the M & A Garage when a Mr. Suarez approached him. Suarez wanted Maddox to call the police. Maddox got a little excited, looked around, and saw someone in *743 the garage. Whoever was in the garage exited through a broken window and fled down an alley. Maddox thereafter gave chase in his automobile. As Maddox proceeded down the alley, the intruder jumped the alley fence. Maddox then drove to Union Street and called for someone to get the police.
The person Maddox had seen in the garage and had given chase to was a colored male wearing a white tee shirt and he was not sure what kind of trousers the man had on other than the fact that they were dark or seemed dark to him at night.
Neither Maddox nor Suarez, who was also a State's witness, could identify the defendant as being the person they had seen in the garage.
Officer George J. Dragneff of the Tampa Police Department had been informed by a radio communication that a colored male wearing a white tee shirt and dark trousers was involved in a breaking and entering at the M & A Garage.
As Officer Dragneff approached the scene, he observed a colored male running approximately two blocks away from the location of the crime.
On cross-examination, Officer Dragneff was asked why he had pursued the defendant and placed him under arrest. The officer answered, "When Carey Law [the defendant] ran from the alley, he was wearing the clothing described in the alert given us."
The officer was then asked, "What was the defendant wearing?" He answered, "As I recall, Carey Law was wearing a dirty white tee shirt and gray bermuda shorts. The alert had said white tee shirt and dark trousers. And it appeared to be dark trousers until after we had tackled the subject and had him in custody, we realized that they were not long trousers, that they were bermuda shorts."
We find in 1 Varon, Searches, Seizures and Immunities, Ch. II, § 3 (1961), in the chapter entitled "The Law of Arrest," a discussion of what constitutes making a valid arrest as follows:
"A valid arrest must be effected before a prosecution official will be permitted to introduce incriminating evidence against an accused charged with a crime, where such evidence was procured at the time of the arrest. If the arrest is proper, a search and seizure of the arrestee is justified and all evidence, admissions and implications that lawfully ensue by reason thereof may be properly presented to a court and jury for consideration. On the other hand, if there was no valid arrest made, the accused may challenge in court all the irregularities that flow from such improper arrest."
Further, in § 4, page 78, under "Probable cause to justify arrest without warrant," it is stated:
"* * * `Probable cause' therefore furnishes the distinction between a legal, or illegal search and seizure. This elusive term has been the basis of considerable controversy between the courts, law enforcement officers, defense counsel and accused persons, and it becomes imperative that we define what constitutes `probable cause.'
"* * *
"We therefore continue our explanation of `probable cause' which has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.
"The courts, in the determination of the existence of probable cause, are not concerned with the question of the guilt or innocence of the accused, but whether or not the arresting officer has reasonable ground for the belief that prompted his action.

*744 "`Probable cause' or `reasonable grounds,' justifying an arrest without warrant, is determined by the factual and practical considerations of everyday life on which reasonable and prudent men act; where the facts and circumstances are within the arresting officer's knowledge and of which he has reasonably trustworthy information sufficient to justify a man of reasonable caution in the belief that an offense has been, or is being committed."
See Diaz v. State, Fla. 1949, 43 So.2d 13; and Casso v. State, Fla.App. 1966, 182 So.2d 252.
In Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 413, 9 L.Ed.2d 441, 450, Mr. Justice Brennan had this to say:
"* * * It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, * * * though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause  evidence which would `warrant a man of reasonable caution in the belief' that a felony has been committed, * * *  must be measured by the facts of the particular case. * * *"
The facts of the particular case sub judice indicate that the incident in question took place in the early morning hours of July 3, 1966, at approximately 1:30 A.M.; a colored male wearing a white tee shirt and what looked like dark trousers was seen fleeing the scene; subsequently, and within a matter of minutes a colored male wearing a white tee shirt and gray bermuda shorts was observed by a police officer running from the direction in which the crime had been committed. The fact that the defendant had on bermuda shorts and not long trousers was not ascertainable by the arresting officer until the defendant had been tackled and taken into custody
Based on the above, we conclude that the police officer had sufficient probable cause to justify the arrest without a warrant. In making the arrest, the officer had the power to search the defendant and to seize anything found on his person or in his possession or under his control tending to show that he was guilty of a violation of the law. The articles found on the defendant tending to prove him guilty of the charges against him were properly admitted into evidence.
But even if in the above discussion we had found that there was not sufficient probable cause to justify the arrest there made, we could not hold the trial court in error because of the holding in the recent case of Kelly v. State, Fla.App. 1967, 202 So.2d 901.
In Kelly, the defendants were convicted of breaking and entering a dwelling house with intent to commit a felony. They had been arrested in the early evening on a busy highway. Their automobile was removed to a garage and searched about twenty minutes after the arrest. A considerable amount of testimony was taken as to whether or not the officers had "probable cause" to legally justify the search without warrant of the automobile being used by the accused. The evidence procured in the search was admitted and on appeal we were asked to reverse the lower court. But as Judge Pierce so ably pointed out in his opinion affirming the trial court (p. 903):
"* * * [W]e do not reach the merits of the question, for the reason that defendants failed to have the issue determined prior to the trial by filing a pretrial motion to suppress, which this Court has previously held to be not only proper but essential in such cases."
A careful perusal of the record in the instant case discloses that the question of whether certain articles found on the defendant at the time of arrest could be properly admitted as evidence was raised *745 for the first time during the trial. Thus, having failed to raise the issue prior to trial by a motion to suppress and finding no other reversible error, the trial court is affirmed.
Affirmed.
SHANNON, J., concurs.
PIERCE, J., concurs specially.
PIERCE, Judge (concurring specially).
I concur solely upon authority of Kelly v. State, supra, without passing on the questions of admissibility of the articles seized or of probable cause for the arrest.